IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN A. SARGENT,

        Plaintiff,

   v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

No. 6:15-cv-01193-HZ

OPINION & ORDER

Brent Wells
Katherine Eitenmiller
Harder Wells Baron & Manning
474 Willamette St., Ste. 200
Eugene, OR 97401

    Attorneys for Plaintiff

//

1 - OPINION & ORDER

Billy J. Williams
United States Attorney, District of Oregon
Janice E. Hébert
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Ste. 600
Portland, OR 97201

Thomas M. Elsberry
Social Security Administration
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Plaintiff Karen Sargent brings this action under the Social Security Act ("Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the Commissioner of Social Security's final decision denying her application for disability insurance benefits ("DIB") under Title II of the Act. For the reasons stated, the Commissioner's decision is reversed and remanded for an immediate award of benefits.

## BACKGROUND

       Sargent applied for DIB in October, 2011, alleging an onset date of April 25, 2011. Tr. 13.[1] Her claim was denied initially and upon reconsideration. Tr. 13. Sargent appeared at a hearing before Administrative Law Judge ("ALJ") John Michaelsen in October of 2013. Tr. 13. ALJ Michaelsen issued a decision on November 8, 2013, in which he found Sargent was not disabled. Tr. 10–28. Sargent sought review by the Appeals Council, but was denied, making ALJ

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as Docket No. 13.

Michaelsen's opinion the Commissioner's final decision that Sargent now challenges in this Court. Tr. 1–9.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

3 - OPINION & ORDER

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## ALJ DECISION

The ALJ found that Sargent met the insurance status requirements of the Act through March 30, 2016. Tr. 15. At step one, the ALJ found Sargent had not engaged in substantial gainful activity since her alleged onset day of April 25, 2011. Tr. 15. At step two, the ALJ found Sargent had the following severe impairments: "degenerative disc disease of the lumbar and cervical spine and fibromyalgia/chronic pain syndrome." Tr. 15. At step three, the ALJ found that Sargent's impairments or combination of impairments did not meet or equal the severity of any listed impairments. Tr. 17. Next, the ALJ found that Sargent had the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work, which is defined as lifting and/or carrying up to ten pounds occasionally and five pounds frequently, standing and/or walking up to two hours, and sitting up to six hours, all within an eight hour workday with normal breaks. In addition, the claimant is further limited to no more than occasional stooping, crouching, crawling, kneeling, balancing, and climbing of ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds.

Tr. 18. At step four, the ALJ found that Sargent could not perform any past relevant work. Tr. 21. At step five, the ALJ found that through the date last insured, considering her age, education, work experience, and RFC, there were jobs in the national economy that Sargent could perform,

4 - OPINION & ORDER

such as telephone solicitor, ticket seller, and survey worker. Tr. 22. Accordingly, the ALJ found that Sargent was not disabled. Tr. 23.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

## DISCUSSION

Sargent contends that the ALJ erred by (1) failing to give clear and convincing reasons for discounting her credibility, (2) failing to give legally sufficient reasons for rejecting opinions from two of her treating physicians, (3) failing to find her migraines and mental health disorders "severe" impairments, and (4) failing to prove that Sargent "retains the ability to perform 'other work' in the national economy." Pl. Brief at 12–13, ECF 14.

### 1. Sargent's Credibility

Sargent argues that the ALJ erred in discrediting her testimony. Pl. Brief at 17. An ALJ analyzes the credibility of a claimant's testimony regarding his subjective pain and other

5 - OPINION & ORDER

symptoms in two steps. Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (citation and internal quotation omitted). Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject his testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Id. (citation and internal quotation omitted). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. Id.

     Sargent testified that she is unable to work because of chronic migraine headaches, fatigue, chronic pain, especially in her joints, and confusion. Tr. 45. She said that she can only sit for fifteen or thirty minutes before needing to stand, which she can do for only five to ten minutes at a time. Tr. 49. She avoids lifting and carrying, and says that her mother or son accompany her shopping. She testified that her medications help her shoulder pain, but are not effective in treating her chronic joint pain. Tr. 48. Sargent said she used to perform more house chores, but has stopped doing so because it "lays her out for days." Tr. 50. She said that she recently moved in with her parents, and that they have "90 percent taken care over . . . my

youngest son for me." Tr. 51. Sargent said that she spends most of her days sleeping because of her fatigue. Tr. 56. She drives occasionally, and has a handicap parking permit. Tr. 65. She said she does not use a computer much because she is confused by it, and while she used to enjoy reading, she is no longer able to read books or magazines because she cannot understand or remember what she reads. Tr. 60. Her mother took over her bank account and controls her finances. Tr. 61. Finally, she said that she has migraines at least twice a week, sometimes more, a pattern she's experienced since she was in high school. Tr. 61–63. She noted that the migraines had increased in frequency and severity in the two years preceding the hearing in October of 2013.

At step one, the ALJ found that Sargent's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[.]" Tr. 27. The ALJ found at step two, however, that Sargent's statements about the intensity, persistence, and limiting of effects of her symptoms were not entirely credible. Tr. 27. The ALJ discounted Sargent's credibility because her "findings upon physical examination have consistently been unremarkable," and her "pain symptoms have improved with treatment" Tr. 18–19. The ALJ also noted that Sargent "made inconsistent reports regarding her activities of daily living" and she "collected unemployment benefits from the State of Oregon in 2011 and 2012." Tr. 19. None of the ALJ's reasons stands up to scrutiny.

First, the ALJ's reasoning that Sargent's medical records reflected "consistently . . . unremarkable" findings is not a clear and convincing reason to discount her testimony regarding the limiting effects of her symptoms. Sargent's doctors have struggled for years to pinpoint the cause of her chronic pain and fatigue; in July of 2011, one physician diagnosed her with "SLE" or Systemic Lupus Erthematosus, an autoimmune disease characterized by joint pain,

7 - OPINION & ORDER

inflammation, and swelling. Tr. 243; Lopez v. Colvin, No. ED CV 13-1753-DFM, 2014 WL 1370672, at *2 (C.D. Cal. Apr. 7, 2014) (citing Systemic Lupus Erythematosus, PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001471/). Later, Sargent tested positive for Lyme disease and received treatment for approximately eighteen months. See e.g., Tr. 276, 417–25, 910, 919–22. Sargent continued to report persistent pain and fatigue despite ongoing SLE and Lyme disease treatment. Tr. 423, 920. She then visited a rheumatologist who observed multiple tender points, with tenderness on palpation, and range of motion pain in Sargent's wrists, elbows, shoulders, cervical and lumbar spine, and hips. Tr. 824. The rheumatologist diagnosed Sargent with mild osteoarthritis and fibromyalgia. Tr. 824. Later, Sargent's primary physician performed her own tests and shifted her focus to treating Sargent with a "working diagnosis of fibromyalgia." Tr. 877.

The ALJ erred here by "effectively requiring 'objective' evidence for a disease," fibromyalgia, "that eludes such measurement." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (citation and quotation omitted). In Benecke, the Ninth Circuit explained the subjective nature of diagnosing fibromyalgia:

> Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.

379 F.3d at 590. The Benecke panel described fibromyalgia symptoms as "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." Id. Sargent has consistently reported these symptoms, and a rheumatologist diagnosed her with the condition. See id. at 565 n.4 (explaining that "[r]heumatology is the relevant specialty for fibromyalgia," and that such a specialist's

opinion is "particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community.") (citations omitted). That Sargent may have exhibited normal range of motion or "intact sensations [and] intact reflexes," as the ALJ described, does not undermine the credibility of her testimony regarding the severity of her symptoms. See Coleman v. Astrue, 423 F. App'x 754, 755 (9th Cir. 2011) (finding the ALJ erred by "rel[ying] on the absence of objective physical symptoms of severe pain as a basis for disbelieving [a claimant's] testimony regarding" the limiting effects of her symptoms of fibromyalgia).

Next, the ALJ discounted Sargent's credibility because "her pain symptoms improved with treatment." But the records the ALJ cited do not support that conclusion. She reported to a neurologist in June of 2013 that a new medication had "partially helped alleviate her pain especially in the shoulders," but that her "main concern" remained "generalized fatigue and pain all over her body," and she continued her mental health counseling "to help cope with her pain." Tr. 826. Her testimony at the hearing a few months later was consistent with this report:

> ALJ: [I]s the current medication you're taking, is it helpful at all?
>
> Sargent: Yeah. I feel like it's helping my shoulder pain. It's like taking my shoulder pain like 80 percent away. If that – if it would take that pain away from the rest, I'd be, you know – but no, not with the rest of my joint pain and everything in the rest of my body.

Tr. 48. The ALJ also noted that Sargent "consistently reported that she was receiving eighty percent relief from her pain medication." Tr. 19. But the Court could only locate two instances where Sargent reported "80 percent" effectiveness with oxycodone from doctor's visits is July and August of 2013. Tr. 871, 875. And again, those reports are entirely consistent with Sargent's testimony at the hearing that her new medication was 80 percent effective in treating her

9 - OPINION & ORDER

shoulder pain, but not effective in treating her chronic, and more problematic, pain. Moreover, those same reports reflect that Sargent still reported chronic fatigue and pain that was "getting worse." Tr. 874. Her chronic pain was so bad in July of 2013 that she "has a commode set up in the bedroom so she doesn't have to move far to use the bathroom," and she was "wear[ing] [D]epends because of [the] inability to get to the bathroom in time because of the pain." Tr. 874. The ALJ's reliance on a small slice of the record without addressing conflicting evidence is not a clear and convincing reason for discounting Sargent's credibility. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (explaining that the ALJ cannot "reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests the opposite result.").

      The ALJ also discounted Sargent's credibility because Sargent "made inconsistent reports regarding her activities of daily living." Tr. 19. Specifically, the ALJ noted that in April of 2012, Sargent indicated that she was independent in self-care, could prepare meals, do housework, go shopping, and pay her own bills. Tr. 19. The ALJ also noted that Sargent was "able to care for her elderly father with Alzheimer's" and was "able to travel to Germany." Tr. 19. The ALJ contrasted that evidence with Sargent's testimony at the hearing where she claimed that "she does not do anything around the house," and "that she relies on her mother to do all of the household chores" and to drive. Tr. 19. Sargent also claimed to never go to the store alone, and the ALJ pointed to a record from August of 2013 where Sargent reported to a counselor that she had "been able to go to the sore by herself, that she got new tires, and that she attended a family event." Tr. 19.

      The Court fails to the see the contradiction in many of these statements. Sargent testified at the hearing that her health had deteriorated rapidly in the two years prior, which is consistent

with the decline in her functioning from April of 2012, to the hearing date of October 2013. Tr. 44. Sargent testified that she had done housework in the past, at least as best she could because she had to care for her children, but that she was not able to any longer. Tr. 50. She explained to the ALJ that she was recently forced to move back in with her parents, and that her mother had taken over most of the daily chores, meal preparation, and caring for Sargent's younger son. Tr. 51–53. Sargent also testified that her mother recently took control of her finances because "the number just look like jumbled to me." Tr. 61. Sargent's testimony is consistent with her medical records, which reflect a worsening of both her fatigue and chronic pain. As noted above, in July of 2013, just a few months before the hearing, Sargent told her primary physician that her pain and fatigue had worsened significantly, to the point she could no longer reliably use the bathroom in her home. Tr. 874.

Moreover, the reference to Sargent shopping alone is one event that she reported to her mental health counselor as a successful step in overcoming her anxiety and depression, a notable achievement for someone who, about six months prior, reported that she stayed in bed avoiding all social contact for up to five days a week. Tr. 846, 854. Such an isolated incident does not suggest that Sargent is not a credible reporter of her limitations. See Gallant, 753 F.2d at 1456.

The ALJ's reliance on Sargent's purported ability to care for her father with Alzheimer's is not supported by substantial evidence in the record. The ALJ generally references two exhibits regarding Sargent's ability to "care for" her father, but the Court is unable to find any specific examples of what that "care" entailed. See Tr. 19 (citing 846–64; 923–47). There is a passing reference in one chart note from a counseling session during which Sargent was encouraged to visit a "local Alzheimer's caregiver support group," but that does not explain what type of care Sargent was providing for her father. Tr. 847. During the hearing the ALJ referenced a January

2013 note which suggested Sargent was "assisting with lifting and assisting him at the time" but the Court cannot find that reference in the record. Tr. 54. Sargent responded that she "was probably helping him get in and out of the shower," but that her father bathed himself. Tr. 54. Otherwise, Sargent testified that the extent of her involvement with her father's care was simply sitting with him when Sargent's mother left the house, and standing by to call for help in case of emergency. Tr. 54. These minor activities do not conflict with Sargent's testimony about her limitations, and accordingly, are not legitimate grounds for discounting her credibility.

Similarly, the ALJ's reliance on Sargent's trip to Germany in September of 2013 is not a clear and convincing reason to discount her credibility. Sargent testified that she required special assistance at the airport to make her flights. Tr. 55. She then stayed for several weeks with her close friends in Germany, and Sargent testified that, while she did some car touring to see "some sights," she spent a lot of time in their home. Tr. 55. Sargent also testified that traveling "took a lot out of her," and that she required several days rest to recover from the increased fatigue brought on by traveling. Tr. 55–56. It is well-established that a claimant "does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), and the face that she traveled one time does not undermine the credibility of Sargent's testimony. Moreover, one of the people whom Sargent visited in Germany submitted a lay witness statement dated October 15, 2013, that corroborated Sargent's description of the trip:

> My husband and I invited Karen to come to us here in Germany where we live. We paid for her full travels here including her passport. We did this out of concern for Karen while she has extreme health issues and we thought this would be a time now to invite her . . . as her health conditions are serious and are deteriorating and mostly likely she will not ever be able to travel again. While Karen was here we noticed Karen's health conditions have drastically and severely changed over the last several years. She has daily headaches which at

12 - OPINION & ORDER

times turn into severe migraines. She has chronic fatigue which requires her to constantly rest, so then in turn she naps frequently[,] sometimes as often as up to 3 times a day.

[S]he gets anxiety while she has severe problems focusing on one thing at a time and it causes her much stress which then turns into this extreme anxiety. There were several incidences where we would be talking to Karen and she had to keep asking us . . . what was asked or said to her as she could not remember. . . . There are even times where she just gives up and says she cannot answer as she cannot process it in her mind what she wants to say in a timely manner during a typical conversation or she just simply forgets entirely. . . . She just goes into this "blank state of mind" so to speak.

Karen has also many pain issues with her health. . . . [S]he has severe back pain, muscle cramps/spasm[s] and joint pains . . . One day we were driving in the car a very short distance and we had to pull over as she had the worst pain in her lower right back. . . . The pain was so unbearable for her as she was in tears.

Tr. 234. All of this is consistent with Sargent's testimony about her pain, fatigue, and confusion.[2]

Finally, the ALJ discounted Sargent's credibility because she collected unemployment benefits from the State of Oregon in 2011 and 2012. "The receipt of unemployment benefits in Oregon is not necessarily inconsistent with the filing of an application for disability benefits under the Social Security Act." Hardin v. Colvin, No. 6:14-CV-01044-SB, 2015 WL 7766080, at *7 (D. Or. Nov. 4, 2015) report and recommendation adopted, No. 6:14-CV-1044-SB, 2015 WL 7777889 (D. Or. Dec. 2, 2015) (citing Mulanax, 293 F. App'x at 523). "Generally, in order to be eligible for disability benefits under the Social Security Act, the person must be unable to sustain

---

[2] "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted). An ALJ need only give "reasons that are germane to each witness" to discount lay testimony. Id. (citations omitted). Here, the ALJ failed to meet even this low bar. The ALJ noted this lay testimony and rejected it because it was "inconsistent with . . . [Sargent's] reported abilities to prepare simple means, to do household chores, and to drive a car." Tr. 21. As explained above, there is no inconsistency between Sargent's ability in 2012 to do those activities and her decline in health leading up to her trip to Germany in September of 2013 and her hearing in October of 2013. The ALJ also discounted the lay testimony because it was "inconsistent with [Sargent's] ability to travel to Germany for over three weeks." Tr. 21. That is not a germane reason because the testimony directly addressed the context of her trip and the difficulties she experienced there.

13 - OPINION & ORDER

full-time work-eight hours per day, five days per week." Mulanax, 293 F. App'x at 523. Under Oregon law, however, "a person is eligible for unemployment benefits if she is available for some work, including temporary or part time opportunities." Id. (citing OR. ADMIN. R. 471–0300036(2)(b), (3)(b)). Here, the record does not indicate whether Sargent was applying for part-time or full-time work, and thus the ALJ erred in discounting her credibility on that score as well.

### 2. Medical Opinions

Next, Sargent argues that the ALJ failed to properly credit the opinions of two of her treating physicians, Dr. Sarah Agsten, and Dr. Darryl George. There are three sources of medical opinion evidence in Social Security cases: treating physicians, examining physicians, and non-examining physicians. Valentine, 574 F.3d at 692 (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. The ALJ can reject the uncontroverted opinion of a treating or examining physician only for "clear and convincing reasons" supported with substantial evidence in the record. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if a treating or examining doctor's opinion is contradicted by another doctor, the ALJ can reject it only by providing "specific and legitimate reasons" that are supported by substantial evidence. Id.

#### a. Dr. Agsten

Dr. Agsten completed a medical source statement in July of 2013. Dr. Agsten opined that Sargent could sit for ten minutes at a time, for a total of less than two hours in a day, and that she

could only stand for five minutes at a time for less than two hours total. Tr. 817. Dr. Agsten wrote that Sargent should only lift up to ten pounds occasionally, and would have additional postural limitations. Tr. 817–18. Dr. Agsten further opined that Sargent would be off task twenty-five percent of the time or more, would have to take unscheduled breaks from work every fifteen minutes, and she would likely miss up more than four days of work per month. Tr. 819.

The ALJ gave Dr. Agsten's opinion "little weight" because it was "inconsistent with Dr. Agesten's own treatment notes, which document that [Sargent] has had minimal physical findings despite significant complaints." Tr. 20. "In fact," the ALJ continued, "Dr. Agsten consistently noted that the claimant's physical impairments did not warrant narcotic medication," and that Sargent's "chronic fatigue and 'foggy thinking' were likely due to all of her pain medications." Tr. 20. None of the ALJ's reasons are sufficient to discount Dr. Agsten's opinion.

First, the ALJ erred by rejecting Dr. Agsten's opinion because it was not corroborated by objective findings. As explained above, Sargent's primary diagnosis is fibromyalgia, a "disease . . . diagnosed entirely on the basis of patients' reports of pain and other symptoms, [and] to date there are no laboratory tests to confirm the diagnosis." Benecke, 379 F.3d at 590. Common symptoms of the disease include chronic pain, multiple tender points, fatigue, stiffness, and sleep disturbance; Sargent suffers from all of these symptoms, and has been diagnosed with fibromyalgia by a rheumatologist. Tr. 239, 242, 285, 290, 894–95. Thus, the lack of objective findings is not a legally sufficient reason for discounting Dr. Agsten's opinion. Benecke, 379 F.3d at 594 (finding that "the ALJ erred in discounting the opinions of [the claimant's] treating physicians" by "effectively requiring 'objective evidence for a disease that eludes such a measurement.'").

15 - OPINION & ORDER

Second, the ALJ's discussion of Sargent's pain medication is internally inconsistent and not supported by the record. On the one hand, the ALJ claims Dr. Agsten did not believe that Sargent's conditions warranted pain medication, but on the other hand, the ALJ discredits Sargent's claims of fatigue and confusion as being caused not by physical or mental impairment but by narcotic pain medication. Moreover, Dr. Agsten declined to prescribe additional narcotic pain medication in part because "it's not clear how helpful they really are," Tr. 919, not, as the ALJ claimed, because Sargent's condition was not sufficiently severe. Tr. 20. The ALJ's conflicting reasoning based on a mischaracterization of the record is not a legitimate reason for rejecting Dr. Agsten's opinion about Sargent's limitations.

    b. Dr. George

Dr. George completed a medical source statement in October of 2013; his opinion is very similar to Dr. Agsten's. Tr. 949–53. Dr. George opined that Sargent could sit for only two hours total and thirty minutes at a time, and that she could only stand for two hours total and fifteen minutes at a time. Tr. 949. Dr. George opined that Sargent could occasionally lift up to ten pounds and that she would have additional postural limitations. Tr. 952. Dr. George also noted that Sargent would likely be off-task twenty-five percent of the time, would require numerous unscheduled breaks, and would likely miss more than four days of work per month. Tr. 951, 953.

The ALJ gave Dr. George's opinion " little weight" because (1) Dr. George "appear[ed] to rely solely on the subjective complaints of [Sargent] rather than his own findings upon examination which indicated that [Sargent] had a normal gait, full strength, and intact reflexes," and (2) because "Dr. George's opinion is inconsistent with [Sargent's] own reported ability to travel to Germany for several weeks, to care for her elderly father, and to do household chores." Tr. 19–20.

The ALJ's reasons for discounting Dr. George's opinion are not legally sufficient. As explained above, it is an error for the ALJ to reject a treating physician's opinion about the limiting effects of a claimant's fibromyalgia on the basis of a lack of objective findings. Benecke, 379 F.3d at 594. Second, the Court explained at length above why the Sargent's purported ability to perform chores in 2012 does not conflict with reports in late 2013 that her health had deteriorated to the point where she could no longer do chores (or even effectively use the bathroom in her home). The Court also explained that the ALJ's reliance on Sargent's trip to Germany and "caring" for her father as evidence of higher functioning is not supported by substantial evidence in the record. Thus the Court does not find those reasons sufficient here to discount Dr. George's opinion.

The Court does not reach Sargent's other asserted grounds for reversing the ALJ's decision.

### 3. Remand

Having established that the ALJ committed legal error in discounting Sargent's testimony and in rejecting the opinions of Drs. Agsten and George, the final question is whether to remand for additional proceedings or an award of benefits. See, e.g., Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded," but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).

The Ninth Circuit applies a three-part test to determine which type of remand is appropriate. Id. at 1020. First, the ALJ must fail to provide legally sufficient reasons for rejecting

17 - OPINION & ORDER

evidence. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. Each part must be satisfied to remand an award for benefits. Id.

Here, the ALJ failed to provide legally sufficient reasons for rejecting Sargent's testimony and the limitations set for in Dr. Agsten's and Dr. George's opinions. Both Drs. Agsten and George opined that Sargent's symptoms would cause her to miss work at least four times per month, to be off task at least twenty-five percent or more of the day, and to take numerous unscheduled breaks. The VE testified that a person with such sporadic attendance and difficulties concentrating could not sustain competitive employment. Tr. 72–73. Therefore, the record is fully developed, and if the case were remanded and the improperly rejected or discounted evidence is credited as true, the ALJ would be required to find Sargent disabled under the Act.

## CONCLUSION

The Commissioner's decision is reversed and remanded for an immediate award of benefits.

IT IS SO ORDERED.

Dated this ___16___ day of ___August___, 2016.

_____
MARCO A. HERNÁNDEZ
United States District Judge

18 - OPINION & ORDER